1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 13, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

FERNANDO H.,[1]

          Plaintiff,

    v.

ANDREW M. SAUL, the Commissioner
of Social Security,

          Defendant.

No.   4:20-CV-5092-EFS

**ORDER DENYING PLAINTIFF'S SUMMARY-JUDGMENT MOTION AND GRANTING DEFENDANT'S SUMMARY-JUDGMENT MOTION**

Before the Court are the parties' cross summary-judgment motions.[2] Plaintiff Fernando H. appeals the denial of benefits by the Administrative Law Judge (ALJ). She alleges the ALJ erred by 1) improperly considering the medical opinions, 2) discounting her symptom reports, and 3) improperly assessing her residual functional capacity and therefore relying on an incomplete hypothetical at

---

[1] To protect the privacy of the social-security Plaintiff and because she identifies herself as a female, the Court refers to Plaintiff as a female and by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

[2] ECF Nos. 14 & 15.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

step five. In contrast, Defendant Commissioner of Social Security asks the Court to affirm the ALJ's decision finding Plaintiff not disabled. After reviewing the record and relevant authority, the Court denies Plaintiff's Motion for Summary Judgment, ECF No. 14, and grants the Commissioner's Motion for Summary Judgment, ECF No. 15.

## I.    Five-Step Disability Determination

A five-step sequential evaluation process is used to determine whether a claimant is disabled.[3] Step one assesses whether the claimant is currently engaged in substantial gainful activity.[4] If the claimant is engaged in substantial gainful activity, benefits are denied.[5] If not, the disability-evaluation proceeds to step two.[6]

Step two assesses whether the claimant has a medically severe impairment, or combination of impairments, which significantly limits the claimant's physical or mental ability to do basic work activities.[7] If the claimant does not, benefits are denied.[8] If the claimant does, the disability-evaluation proceeds to step three.[9]

---

[3] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[4] *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[5] *Id.* §§ 404.1520(b), 416.920(b).

[6] *Id.* §§ 404.1520(b), 416.920(b).

[7] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[8] *Id.* §§ 404.1520(c), 416.920(c).

[9] *Id.* §§ 404.1520(c), 416.920(c).

Step three compares the claimant's impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[10] If an impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.[11] If an impairment does not, the disability-evaluation proceeds to step four.

Step four assesses whether an impairment prevents the claimant from performing past work by determining the claimant's residual functional capacity (RFC).[12] If the claimant is able to perform prior work, benefits are denied.[13] If the claimant cannot perform prior work, the disability-evaluation proceeds to step five.

Step five, the final step, assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[14] If so, benefits are denied. If not, benefits are granted.[15]

---

[10] *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

[11] *Id.* §§ 404.1520(d), 416.920(d).

[12] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[13] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[14] 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Kail v. Heckler*, 722 F.2d 1496, 1497-98 (9th Cir. 1984).

[15] 20 C.F.R. §§ 404.1520(g), 416.920(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

The claimant has the initial burden of establishing entitlement to disability benefits under steps one through four.[16] At step five, the burden shifts to the Commissioner to show that the claimant is not entitled to benefits.[17]

## II.    Factual and Procedural Summary

Plaintiff filed Title II and XVI applications, alleging a disability onset date of December 31, 2012.[18] Her claims were denied initially and upon reconsideration.[19] A video administrative hearing was held before Administrative Law Judge Jesse Shumway.[20]

In denying Plaintiff's disability claims, the ALJ made the following findings:

- Step one: Plaintiff had not engaged in substantial gainful activity since December 31, 2012, the alleged onset date, through her date last insured of March 31, 2014.

- Step two: Plaintiff had the following medically determinable severe impairments: gender dysphoria, major depressive disorder, generalized anxiety disorder, unspecified personality disorder,

---

[16] *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

[17] *Id.*

[18] AR 177-86.

[19] AR 88-94 & 99-112.

[20] AR 30-48.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 4

attention deficit hyperactivity disorder (ADHD), bipolar disorder; and alcohol use disorder;

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments;

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  > (S)he is limited to simple, routine tasks consistent with a reasoning level of two or less; and (s)he can have only occasional, superficial contact with the public, coworkers, and supervisors.

- Step four: Plaintiff has no past relevant work; and

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as cleaner/housekeeper, cafeteria attendant, and fish cleaner.[21]

When assessing the medical-opinion evidence, the ALJ found the state agency psychological consultants' Title XVI opinions that Plaintiff was not disabled highly persuasive and their Title II opinions that Plaintiff did not have a severe impairment before the date last insured.[22] The ALJ also found Plaintiff's medically

---

[21] AR 12-29.

[22] AR 21-22.

determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record.[23]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to this Court.

### III.    Standard of Review

A district court's review of the Commissioner's final decision is limited.[25] The Commissioner's decision is set aside "only if it is not supported by substantial evidence or is based on legal error."[26] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[27] Moreover, because it is the role of the ALJ and not the Court to weigh conflicting evidence, the Court

---

[23] AR 20-21.

[24] AR 1-6.

[25] 42 U.S.C. § 405(g).

[26] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[27] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[28] The Court considers the entire record as a whole.[29]

Further, the Court may not reverse an ALJ decision due to a harmless error.[30] An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."[31] The party appealing the ALJ's decision generally bears the burden of establishing harm.[32]

## IV.    Analysis

### A.    Medical Opinions: Plaintiff fails to establish consequential error.

Plaintiff challenges the ALJ's 1) failure to assign any consideration to the limitations opined by her treating providers: Thomas Dillon, M.D., Benjamin Gonzalez, M.D., Bruce Wilson, M.D., Rikki Cook, LMHC, and Debra Pugh,

---

[28] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[29] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[30] *Molina*, 674 F.3d at 1111.

[31] *Id.* at 1115 (quotation and citation omitted).

[32] *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

PMHMP-BC; 2) finding that the Title XVI reviewing opinions of Dr. Brown and Dr. Kester were highly persuasive; and 3) decision not to call a psychiatric medical consultant to offer an opinion at the administrative hearing.

      1.    <u>Standard</u>[33]

      An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.[34] The ALJ need not however "give any specific evidentiary weight . . . to any medical opinion(s)."[35]  A medical opinion is a statement from a medical source about what the claimant can still do despite her impairments and whether the claimant has one or more impairment-related limitations in the following abilities:

- perform physical demands of work activities;
- perform mental demands of work activities (such as understanding, remembering, carrying out instructions, maintaining concentration,

---

[33] For claims filed on or after March 27, 2017, such as Plaintiff's claims, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

[34] 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

[35] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

persistence, or pace, and responding appropriately to supervision, co-workers, or work pressures in a work setting);

- perform sensory demands of work; and

- adapt to environmental conditions.[36]

The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[37] Supportability and consistency are the most important factors, and the ALJ is required to explain how both of these factors were considered:[38]

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other

---

[36] 20 C.F.R. §§ 404.1513(a), 416.913(a).

[37] *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). When assessing the medical source's relationship with the claimant, the ALJ is to consider the treatment length, frequency, purpose, and extent, and whether an examination was conducted. *Id.* The ALJ may also consider whether the medical source has familiarity with the other record evidence or an understanding of the disability program's policies and evidentiary requirements. *Id.*

[38] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 9

medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[39]

Typically, the ALJ may, but is not required to, explain how the other factors were considered.[40]

### 2.   Treating Providers

Plaintiff received counseling, medication management, and gender-transition medical care from several medical providers, including Dr. Dillon, Dr. Gonzalez, Dr. Wilson, Ms. Cook, and Ms. Pugh. Plaintiff contends the ALJ erred by not considering the limitations opined by these providers. However, Plaintiff fails to identify a medical opinion issued by these medical providers. The records highlighted by Plaintiff include the medical providers' observations and findings or a summary of Plaintiff's reports. These records did not include the medical source's opinion about what Plaintiff can do despite her impairments or what Plaintiff's impairment-related limitations or restrictions are regarding her ability to perform the mental demands of work. Because these medical providers did not issue

---

[39] *Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

[40] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

medical opinions, the ALJ did not error. Moreover, the ALJ's analysis reveals that he considered the records from these medical providers, including their observations and findings and their summary of Plaintiff's reports. Plaintiff fails to establish that the ALJ erred as to Plaintiff's treating providers.

      3.   <u>Reviewing Opinions</u>

      Plaintiff challenges the finding by the ALJ that Dr. Brown's and Dr. Kester's reviewing Title XVI opinions were highly persuasive.[41] Dr. Brown and Dr. Kester reviewed the medical file in July and September 2017, respectively, and opined that Plaintiff's abilities to understand, remember, and apply information, and adapt and manage herself were mildly limited and that her abilities to interact with others and concentrate, persist, or maintain pace were moderately limited.[42] These doctors also found that Plaintiff was moderately limited in her abilities to carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, interact with the general public, coworkers, and peers, and complete a normal workday or workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an

_____

[41] As mentioned earlier, the ALJ found Dr. Brown's and Dr. Kester's Title XVI opinions highly persuasive but did not find their Title II opinions—that Plaintiff did not have a severe impairment before the date last insured—persuasive.

[42] AR 54-68 & 71-87.

unreasonable number and length of rest periods. Notwithstanding these limitations, Dr. Brown and Dr. Kester opined that Plaintiff retained the ability to sustain concentration and pace for simple, routine tasks if she performed work that only required superficial interaction with the public, coworkers, and supervisors.

The ALJ found Dr. Brown's and Dr. Kester's opinions highly persuasive because they were consistent with the objective and observational findings and Plaintiff's allegations, as tempered by her treatment history. First, the objective and observational findings reflected that Plaintiff suffered severe anxiety and depression, gender dysphoria, and other mental health symptoms. These impairments primarily impacted her mood and affect without limiting her ability to communicate, cooperate, maintain attention, and concentrate and typically did not more than mildly to moderately limit her thought content, judgment, or insight.[43] Plaintiff challenges the ALJ's reliance on these 2017 opinions because

---

[43] *See, e.g.*, AR 379-80 (11/26/12: appropriate dress, cooperative, normal/slow speech, sad/depressed, anxious, irritable, congruent mood, goal-directed thought process, no suicidal or homicidal intent, and good concentration); AR 283-84 (12/27/12: appropriate dress, cooperative, speech normal, sad/depressed, congruent mood, goal directed, no abnormal thought content or suicidal or homicidal intent, intact insight/judgment, orientated, intact recent and remote memory, intact attention/concentration, and excellent fund of knowledge); AR 373 (5/16/13: constricted/flat affect, depressed mood, well-groomed, intact thought process,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

they were issued without considering the medical records from 2018 and 2019. However, Plaintiff's noted presentation and the observational findings were generally consistent over the longitudinal medical record. The ALJ rationally found that Dr. Brown's and Dr. Kester's opinions were consistent with the objective and observational findings.[44]

Second, the ALJ found Dr. Brown's and Dr. Kester's opinions were consistent with Plaintiff's allegations as tempered by her treatment history. Plaintiff alleged that her impairments were disabling because they impacted her ability to talk, complete tasks, concentrate, understand, follow instructions, use her hands, and remember things. The ALJ discounted Plaintiff's symptoms because, in part, Plaintiff's course of treatment was of low intensity, consisting of

----

appropriate verbal behavior, orientated, normal insight, and intact memory, but claimant reports a memory problem); AR 296 (11/6/13: well-dressed and groomed, orientated, normal speech, normal thought processes and content, logical associations, normal judgment and insight, normal recent and remote memory, normal attention and concentration, normal fund of knowledge, and depressed affect); *see also* AR 297-99 (11/14/13);  AR 310 (1/10/14); AR 320 (9/20/16); AR 325 (9/27/16); AR 395 (2/21/17); AR 399 (3/7/17); AR 315 (5/12/17); AR 369 (8/11/17); AR 417 (1/8/18); AR 429 (10/24/18); AR 432 (11/15/18); AR 438-39 (2/1/19); & AR 470-72 (4/5/19).

[44] *See, e.g.*, AR 416, AR 419, AR 428, & AR 434.

approximately monthly counseling, and medication management every few months. As is discussed more below, the Court finds that this articulated reason is not supported by substantial evidence. The ALJ needed to offer more explanation as to why Plaintiff's course of treatment was "low intensity" treatment for her conditions. However, any error in characterizing Plaintiff's course of treatment as low intensity is harmless as the ALJ appropriately considered the type and nature of the treatment Plaintiff received and assessed the notes, observations, and findings made by the treating providers. As is discussed above, the ALJ rationally found the objective medical record is consistent with Dr. Brown's and Dr. Kester's Title XVI opinions.

      4.   <u>Medical Expert</u>

Plaintiff contends the ALJ erred by not calling a medical expert at the administrative hearing to offer an opinion as to Plaintiff's functional limitations. This is not a case where a medical expert was needed to opine as to the disability onset date; nor was the evidence sufficient to require an ALJ to receive a listings or limitations opinion from a medical expert.[45] Plaintiff fails to establish error in this regard.

**B.   Symptom Complaints: Plaintiff fails to establish consequential error.**

Plaintiff faults the ALJ for failing to rely on reasons that were clear and convincing in discrediting her symptom claims.  An ALJ engages in a two-step

---

[45] Hearing, Appeals, and Litigation Law Manual (HALLEX) I-2-5-32 & I-2-5-34.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.[46] "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[47] "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom."[48]

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."[49] General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these

---

[46] Social Security Ruling (SSR) 16–3p, 2016 WL 1119029, at *2.

[47] *Molina*, 674 F.3d at 1112 (quotation marks omitted).

[48] *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

[49] *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).

claims.[50] "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."[51]

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.[52] The ALJ is instructed to "consider all of the evidence in an individual's record" to "determine how symptoms limit ability to perform work-related activities."[53] Here, the ALJ found Plaintiff's statements

---

[50] *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995), and *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted claimant's symptom claims)).

[51] *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

[52] SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §§ 404.1529(c), 416.929(c).

[53] SSR 16-3p, 2016 WL 1119029, at *2.

concerning the intensity, persistence, and limiting effects of her symptoms inconsistent with the objective medical evidence, her activities, the low-level treatment, and the recommendation by her provider that she work.[54]

First, as to the ALJ's finding that Plaintiff's symptom reports were inconsistent with the objective record and clinical observations, symptom reports cannot be solely discounted on the grounds that they were not fully corroborated by the objective medical evidence.[55] However, objective medical evidence is a relevant factor in considering the severity of the reported symptoms.[56] "Objective medical evidence" means signs, laboratory findings, or both.[57] In turn, "signs" is defined as:

> one or more anatomical, physiological, or psychological abnormalities that can be observed, apart from [the claimant's] statements (symptoms). Signs must be shown by medically clinical diagnostic techniques. Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception, and must also be shown by observable facts that can be medically described and evaluated.[58]

Here, the ALJ found that, although Plaintiff had considerable anxiety, depression, and at times irritability, along with her gender dysphoria, the objective

---

[54] AR 20-22.

[55] *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

[56] *Id.*

[57] 20 C.F.R. §§ 404.1502(f), 416.902(k).

[58] *Id.* §§ 404.1502(g), 416.902(l).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

record and clinical observations showed adequate grooming, hygiene, cooperation, eye contact, psychomotor activity, speech, memory, and concentration.[59] The ALJ also found that Plaintiff's insight and judgment were sometimes limited and her thought process illogical at times.[60] While the ALJ acknowledged that some of Plaintiff's reported symptoms were consistent with the objective observations, the ALJ found these clinical observations and objective findings were inconsistent with Plaintiff's extreme reports that she was unable to sustain adequate memory, concentration, and attendance at work due to her impairments, namely her intense anxiety being around people and associated panic attacks. The ALJ's finding is supported by substantial evidence. While the record reflects that Plaintiff struggles

---

[59] AR 21 (citing AR 379-80 (11/26/12); AR 283-84 (12/27/12); AR 296 (11/6/13); AR 297-99 (11/14/13); AR 310 (1/10/14); AR 320 (9/20/16); AR 325 (9/27/16); AR 395 (2/21/17); AR 399 (3/7/17); AR 369 (8/11/17); AR 429 (10/24/18); AR 432 (11/15/18); AR 438-39 (2/1/19); & AR 470-72 (4/5/19)). The ALJ also noted that Plaintiff demonstrated normal mood on some occasions. Yet, these were observations made during appointments for physical-health conditions. On this record, which contains a significant number of mental-health treatment records, the Court bases its substantial-evidence decision solely on the mental-health treatment records and not the physical-health treatment records. *See* AR 19 (citing AR 348, 353, 385, 448, 454, & 739).

[60] *Compare* ARs *supra with* AR 315 (5/12/17), AR 369 (8/11/17), & AR 417 (1/8/18).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

with her mood and anxiety, the mental status findings and observations do not reflect that Plaintiff's mood and anxiety—or medications—impacted her concentration and memory to the extent that Plaintiff reports. The ALJ rationally found Plaintiff's extreme reports inconsistent with the clinical observations and findings, which generally noted that Plaintiff's memory and fund of knowledge were adequate except for slight deficiency in recall.[61] Moreover, consistent with Plaintiff's observed impacted anxiety and mood and sometimes limited thought content and judgment, the RFC limited Plaintiff to simple, routine tasks with a lower-level reasoning and with only occasional, superficial contact with the public, coworkers, and supervisors. That the objective medical evidence was inconsistent with Plaintiff's reported disabling limitations was a relevant factor for the ALJ to consider.

Second, the ALJ discounted Plaintiff's symptom reports because they were inconsistent with her history of activities, including nearly completing an associate degree, driving, leaving the house alone, caring for pets, engaging in self-care, and completing basic chores. An ALJ may consider whether a claimant's exertional and non-exertional activities are inconsistent with the claimant's reported disabling symptoms.[62] Here, the ALJ found the activities that Plaintiff performed were like activities performed in a variety of occupations. Plaintiff highlights that her

---

[61] *See, e.g.*, AR 369, 371-76, 432. 435, 438, 444, 471, & 477.

[62] *Molina*, 674 F.3d at 1113; *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

attendance at community college spanned four to five years—a much slower rate than a full-time student. The record is clear—as the ALJ so found—that Plaintiff's anxiety, depression, and other impairments limit her. Recognizing that it is difficult for Plaintiff to be around others due to her social anxiety and that it impacts her ability to function, the ALJ rationally crafted an RFC that limited Plaintiff to occasional, superficial contact with the public, coworkers, and supervisors. Moreover, the ALJ then restricted Plaintiff to simple and routine tasks with a reasoning level of two or less. Plaintiff's activities reveal an ability to sustain concentration and attention for lower-level reasoning tasks when her contact with others is limited. The ALJ rationally found that Plaintiff's activities reflected attention, concentration, and other non-exertional abilities greater than the abilities reported by Plaintiff.

Third, the ALJ found that Plaintiff had been advised that working would likely improve her mental health symptoms. An ALJ may consider any factor concerning the claimant's functional limitations and restrictions—or lack thereof.[63] While a recommendation by a medical provider that a claimant return to full-time work is relevant information for the ALJ to consider, here, the Court finds that the cited note does not support the ALJ's finding:[64]

---

[63] 20 C.F.R. §§ 404.1529(c)(3)(vii) & 416.929(c)(3)(vii).

[64] *See* AR 21 (citing AR 340).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

TOPICS DISCUSSED: PT. FEELING LESS ANXIETY BUT CONTINUES TO HAVE FEARS OF DYING AND GOING TO WORK.  PT. FEELS HE IS NOT WORTHY OF AS WE ATTEMPTED REALISTIC SELF-TALK METHODS TO REDUCE PANIC AND FEAR OF DYING, PT. UNDERSTANDS WHAT HE NEEDS TO GO TO WORK BUT SAYS HE IS "SCARED OF WORKING."  WE UTILIZED HIS KNOWLEDGE OF EXPOSURE TREATMENT BUT UNABLE TO MOTIVATE PT. TO SEEK VOCATIONAL OPPORTUNITIES AT THIS TIME.

This cited note does not contain a clear recommendation by the therapist, who was meeting with Plaintiff for only the second time, that Plaintiff perform and sustain full-time work to improve her mental health. Rather the counselor discussed the idea of working with Plaintiff to motivate her beyond her anxiety and fears. This note does not constitute substantial evidence to support the ALJ's finding that a mental health provider advised Plaintiff that work would likely improve her mental-health symptoms. This error is inconsequential, however, because the ALJ offered two other clear and convincing reasons supported by substantial evidence—inconsistency with the objective medical evidence and Plaintiff's activities—to discount Plaintiff's reported symptoms.

Finally, the ALJ discounted Plaintiff's reported symptoms because her course of treatment was of low intensity, consisting of approximately monthly counseling and medication management every few months. An ALJ may consider the amount and type of treatment when assessing the intensity and persistence of the claimant's symptoms.[65] The record reflects that Plaintiff generally received monthly counseling from November 2012 to September 2013, then routine medication management from August 2016 through December 2018, with

---

[65] 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

counseling resuming in September 2016 through March 2017, and then resuming

with counseling in January 2018. While there are gaps in mental health counseling

and treatment since the alleged onset date in December 2012, the ALJ did not

discount Plaintiff's reported symptoms due to gaps in treatment but instead due to

low-intensity treatment (i.e., only counseling and medication management). There

is no information in this record indicating that a person with Plaintiff's

impairments would benefit from a higher intensity treatment or what constitutes

high intensity treatment. Accordingly, without further explanation by the ALJ or

supporting evidence, the ALJ's proffered reason—that Plaintiff received a

purported low-intensity course of treatment—was not a clear and convincing

reason to discount her symptom reports. This error is inconsequential however

because the ALJ offered other clear and convincing reasons supported by

substantial evidence to discount Plaintiff's symptom reports.

In summary, Plaintiff fails to establish the ALJ erred by discounting her

symptom reports.

**C.    Step Five: Plaintiff fails to establish error.**

Plaintiff argues that the ALJ's hypothetical failed to consider the limitations

set forth by her providers, including her inability to maintain productivity, pace,

work quality, and necessary attendance. "[T]he ALJ is responsible for translating

and incorporating clinical findings into a succinct RFC."[66] Plaintiff's step-five

---

[66] *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).

argument merely restates her earlier allegations of error, which are not supported by the record. Accordingly, the ALJ's hypothetical and RFC properly accounted for the limitations supported by the record.[67] There was no step-five error.

### V.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED**.

3.    The Clerk's Office shall enter **JUDGMENT** in favor of the Commissioner.

4.    The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order and provide copies to all counsel.

**DATED** this 13th day of April 2021.

          s/Edward F. Shea
          EDWARD F. SHEA
      Senior United States District Judge

---

[67] *See Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989) (allowing ALJ to limit a hypothetical to restrictions supported by substantial evidence).